IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOHN J. DUPONT, ET AL., §
 §
       Plaintiffs, §
 §
VS. § NO. 4:10-CV-239-A
 §
FREIGHT FEEDER AIRCRAFT §
CORPORATION, INC., ET AL., §
 §
       Defendants. §

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Now before the court for consideration is the motion to dismiss filed in the above-captioned action by defendants, Freight Feeder Aircraft Corporation, Inc. ("Freight Feeder"), L. David Bridges ("Bridges"), R. Darby Boland ("Boland"), Kevin Williams ("Williams"), Stephen Carmichael ("Carmichael"), H. Cliff Saylor ("Saylor"), and Edward F. Eaton ("Eaton") (collectively, Bridges, Boland, Williams, Carmichael, Saylor, and Eaton are the "Individual Defendants"). Having considered the motion, the response of plaintiffs, John J. Dupont ("Dupont"), Randy Moseley ("Moseley"), and Utilicraft Aerospace Industries, Inc. ("Utilicraft"), defendants' reply, and applicable legal authorities, the court concludes that the motion should be granted.

I.

Plaintiffs' Claims and Defendants' Motion

Plaintiffs initiated this action by the filing on April 13, 2010, of their original complaint, alleging claims and causes of action against defendants for securities fraud pursuant to Rule 10b-5 of the Securities Exchange Act of 1934, breach of contract, fraud, conversion, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, constructive trust, fraudulent transfers, and self-dealing. Plaintiffs allege as the primary basis for this court's jurisdiction federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on their claim for securities fraud, but alternatively allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Defendants in their motion argue that dismissal is required because this court lacks subject matter jurisdiction under either § 1331 or § 1332 because plaintiffs have failed to state a claim or cause of action for securities fraud, and diversity jurisdiction does not exist. Defendants further argue that personal jurisdiction is lacking over Freight Feeder, Bridges, Boland, Carmichael, Saylor, and Eaton, that venue is improper, and that plaintiffs have otherwise failed to state a claim upon which relief can be granted.

II.

Factual Allegations in the Complaint

Plaintiffs' complaint contains the following factual allegations:

Dupont founded the Freight Feeder aircraft program in 1990 under a corporation that in 2004 became Utilicraft, an independent producer of specialized freight aircraft. The Individual Defendants, led by Bridges, in 2007 formed Freight Feeder for the purpose of acquiring certain assets of Utilicraft. The two companies subsequently agreed to an Asset Purchase Agreement ("APA") whereby Freight Feeder acquired Utilicraft's assets, including certain patents and other intellectual property, and assumed certain of Utilicraft's liabilities. As part of the consideration for the APA, Utilicraft received royalties on future sales of the freight aircraft developed and sold by Freight Feeder, as well as substantial shares in Freight Feeder. Dupont also entered into an employment agreement with Freight Feeder, whereby he retained his position as president and chief executive officer of Utilicraft, and also retained control of Freight Feeder.

The ultimate purpose of the APA was to infuse capital into the existing products developed by Dupont and to support Freight

Feeder's acquisition of other intellectual property on certain aircraft designs. In September 2009, the Individual Defendants, again led by Bridges, represented to Dupont that they had obtained investors in one of Freight Feeder's programs. Bridges further represented that, based on discussions with the potential investors, the Individual Defendants would need to assume control of Freight Feeder to secure additional venture capital. At the request of Bridges and the Individual Defendants, Dupont was thereafter offered a "buy-out" of his intellectual property rights and his employment agreement with Freight Feeder to relieve him of the responsibility to raise capital for the company.

"Dupont was induced into relinquishing his shares and control of [Freight Feeder] in exchange for executing the 'buy-out' agreement." Pls.' Original Compl. at 5. The buy-out agreement provided a detailed compensation package for Dupont, including a $12,000.00 cash payment for executing the buy-out agreement, a payment of $12,000 per month for twenty-three months pursuant to the terms of a promissory note, and additional compensation based on the occurrence of certain events related to product development, certification, and sales.

Dupont received the initial $12,000 cash payment at the closing in October 2009, and also received payments of $12,000 in each of November and December, for payments totaling $36,000. Freight Feeder made no further payments and has still failed to pay Dupont under the terms of the promissory note.

Dupont received an indication from Bridges in or around January 2010 that the Board of Directors for Freight Feeder (comprised of the Individual Defendants) wanted to sell Freight Feeder's assets, including all intellectual property, and retain its liabilities in an empty corporate shell. Upon learning this information, Dupont retained counsel, who submitted a letter to Bridges on February 26, 2010, indicating that a transfer or sale of Freight Feeder's assets without also transferring the liabilities would be construed as a breach of Freight Feeder's management's fiduciary duty, breach of its buy-out agreement with Dupont, and potentially fraud.

Rather than respond to Dupont's demands, Bridges and the other Individual Defendants sent notice on March 24, 2010, of an emergency meeting of shareholders to be held April 2, 2010, for the purpose of voting on a sale of Freight Feeder's assets to an entity called MidAmerica Aircraft Corporation ("MidAmerica"). According to the agreement with MidAmerica attached to the March

24, 2010, notice, the agreement with Dupont and its corresponding obligations would remain with Freight Feeder's empty corporate shell. Plaintiffs allege, on information and belief, that MidAmerica is owned and controlled by the Individual Defendants. Despite Dupont's demand letter, the Individual Defendants consummated the sale of assets to MidAmerica.

Moseley became chief financial officer of Freight Feeder in December 2007. Freight Feeder and Moseley entered into a compensation agreement for $175,000 per year plus .25 percent of all future aircraft sales. Plaintiffs contend that because Moseley refused to go along with the treatment of Dupont, his employment agreement with Freight Feeder was also "inexorably terminated by rendition of the Asset Purchase Agreement with MidAmerica." Id. at 8.

III.

Applicable Legal Principles

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case is properly dismissed when the court "lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998) (citations omitted). Where, as here, the defendants facially attack the court's subject matter

jurisdiction based only on the factual allegations pleaded on the face of the complaint, the court accepts those allegations as true. Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981). However, upon a defendant's challenge to the court's subject matter jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).

IV.

Analysis

The primary basis alleged for this court's jurisdiction is a federal question in the form of a claim for securities fraud pursuant to the Securities Exchange Act of 1934, which makes it unlawful for any person

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Pursuant to this section, the SEC promulgated Rule 10b-5, under which plaintiffs' claims arise, which in turn

makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To properly plead a claim or cause of action under Rule 10b-5, the plaintiff must allege, in connection with the sale or purchase of securities, a misstatement or omission of a material fact, made with scienter, that was relied on by the plaintiffs, that proximately caused the plaintiffs' injury. <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 157 (2008) (citations omitted); <u>Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 362 (5th Cir. 2004).

The Private Securities Litigation Reform Act ("PSLRA") imposes additional pleading requirements on a plaintiff seeking relief under Rule 10b-5 by requiring such claims to be pleaded

with particularity:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1). The PSLRA thus requires the plaintiff "to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading." Southland Secs. Corp., 365 F.3d at 362 (internal citations omitted). With respect to each alleged act or omission, the plaintiff is also required by the PSLRA to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. (emphasis in original) (citing 15 U.S.C. § 78u-4(b)(2)); see also Rosenzweig v. Azurix Corp., 332 F.3d 854, 866 (5th Cir. 2003). If the plaintiff fails to comply with the above pleading requirements, the PSLRA mandates dismissal by the court on motion of the defendant. 15 U.S.C. § 78u-4(b)(3)(A).

The court has provided the preceding discussion to emphasize the "rigorous pleading standards" imposed by Rule 10b-5 and the PSLRA. Rosenzweig, 332 F.3d at 867. Upon a careful review of

9

the factual allegations in the complaint, bearing in mind the foregoing discussion of Rule 10b-5 and the PSLRA, the court agrees with defendants that the complaint fails to satisfy those pleading requirements. The court is unable to locate in the factual allegations of the complaint, set forth in section II supra, any alleged misrepresentations of the defendants that include the time, place, and identity of the speaker, the content of the alleged misrepresentation, an explanation as to why the challenged statement or omission is false or misleading, or any "facts giving rise to a strong inference" that any defendant acted with the required state of mind. See id.; see also Southland Secs. Corp., 365 F.3d at 363.

Plaintiffs' contention in their response, that they may rely on notice pleading and then attempt to prove defendants' conduct beyond the pleadings, is in contravention of the clear statutory requirements quoted above for pleading a claim of securities fraud under Rule 10b-5 and the PSLRA. Plaintiffs refer the court generally to the allegations in paragraphs 20-27 of the complaint, the contents of which are summarized in section II above. Although the response attempts to explain why defendants' conduct alleged therein constitutes securities violations, plaintiffs have directed the court to nothing in the complaint

setting forth with particularity the specific factual allegations required to state a claim under Rule 10b-5 or the PSLRA. Because plaintiffs have failed to comply with those pleading requirements, the PSLRA requires dismissal of their claim for securities fraud.

Plaintiffs urge that even if the court concludes that no federal question jurisdiction exists, this action is still properly before the court pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332. Defendants disagree, arguing that no diversity exists because plaintiff Moseley and defendant Williams are both citizens of Texas.

Even without resolving the question of Williams's state of citizenship, the court finds that plaintiffs have failed to adequately allege diversity jurisdiction. Pleadings to establish diversity must set forth with specificity the citizenship of the parties. See e.g., Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis, 893 F.2d 968, 969 (8th Cir. 1990); McGovern v. Am. Airlines, Inc., 511 F.2d 653, 654 (5th Cir. 1975). For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1). Citizenship of a natural person is

determined by domicile, which is a combination of both the residence of the party and the party's intent to remain there permanently. See Newton v. Mahoning County Comm'rs, 100 U.S. 548, 562 (1879); Acridge v. Evangelical Lutheran Good Samaritan Soc'y, 334 F.3d 444, 448 (5th Cir. 2003).

As to the corporate parties, the complaint alleges that Utilicraft is a Nevada entity that was formed under the laws of Nevada, Freight Feeder is a Wyoming corporation organized under the laws of Wyoming, and that both entities transact business in Texas. These allegations do not properly allege citizenship of a corporate party. Further, as to each individual party, plaintiffs allege only their states of residence, rather than citizenship. Thus, plaintiffs have failed to properly allege the citizenship of any party so as to invoke this court's diversity jurisdiction.

Because the court finds dispositive defendants' argument concerning subject matter jurisdiction, it need not reach the remaining grounds set forth in defendants' motion. Inasmuch as the court is dismissing plaintiffs' federal claim, the court declines to exercise its supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3). Rhyne v. Henderson Cnty., 973 F.2d 386, 395 (5th Cir. 1992).

V.

ORDER

Therefore,

The court ORDERS that defendants' motion to dismiss be, and is hereby, granted as to the securities fraud claim brought by plaintiffs, Dupont, Moseley, and Utilicraft, against defendants, Freight Feeder, Bridges, Boland, Williams, Carmichael, Saylor, and Eaton, and that such claim be, and is hereby, dismissed with prejudice.

The court further ORDERS that plaintiffs' state law claims for breach of contract, fraud, conversion, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, constructive trust, fraudulent transfers, and self-dealing be, and are hereby, dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

SIGNED December 7, 2010.

_____
JOHN MCBRYDE
United States District Judge